J-A08009-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF Z.K.S.I. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: E.K.I., SR., FATHER | : | |
| | : | |
| | : | No. 1150 WDA 2021 |

Appeal from the Decree Entered August 27, 2021
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2020-720

| | | |
|---|---|---|
| IN RE: ADOPTION OF E.K.I., JR. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: E.K.I., SR., FATHER | : | |
| | : | |
| | : | No. 1151 WDA 2021 |

Appeal from the Decree Entered August 27, 2021
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  2022-722 IVT

| | | |
|---|---|---|
| ADOPTION OF: U.Z.M.I. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: E.K.I., SR., FATHER | : | |
| | : | |
| | : | No. 1152 WDA 2021 |

Appeal from the Decree Entered August 27, 2021
In the Court of Common Pleas of Cambria County Orphans' Court at
No(s):  No. 2020-721 IVT

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: APRIL 27, 2022**

E.K.I., Sr., ("Father") appeals from the decrees entered on August 27, 2021, that granted the petitions filed by the Cambria County Children and Youth Services ("CYS") to involuntarily terminate his parental rights to three children, twins Z.K.S.I. and U.Z.M.I. (born in December of 2019) and E.K.I., Jr. (born in June of 2016) ("Children").[1]  After review, we affirm.

Father previously filed an appeal following the trial court's orders changing the Children's goals to adoption.  We rely on this Court's memorandum for an overview of the facts found by the trial court.[2]

> The record reveals that [CYS] obtained protective custody of E.I., Jr., on July 26, 2019, prior to the births of U.I. and Z.I. The juvenile court entered an order memorializing E.I., Jr.'s[] placement on July 30, 2019, and CYS filed a shelter care application that same day.  In its application, CYS averred that Mother left E.I., Jr., under the supervision of an older half-sibling, who threw E.I., Jr.  Mother did not seek medical attention for E.I., Jr., resulting in a charge of endangering the welfare of children and a child abuse investigation.  CYS further averred that Father was facing a child abuse investigation for allegedly striking and bruising the older half-sibling, and that there were reports of domestic disputes between Mother and Father.  CYS filed a dependency petition on August 2, 2019, in which it raised concerns identical to those in the shelter care application.  The court entered a shelter care order on August 5, 2019, and adjudicated E.I., Jr., dependent by order entered August 20,

---

[1] The parental rights of Children's mother, B.S., ("Mother") were also terminated.  Mother has filed a separate appeal to this Court.  ***See*** 1114 WDA 2021.

[2] The memorandum opinion quoted here identifies the Children only by their first and last initials and omits the initials for their middle name(s), which we have included.

2019. The court designated his permanent placement goal as return to parent or guardian.

CYS obtained protective custody of U.I. and Z.I. shortly after their births, and on January 13, 2020, filed petitions for dependency. As to Father, CYS averred that his home was inappropriate, and that Mother had reported he was drinking heavily and being verbally abusive toward her. CYS further averred that Father had not completed his court-ordered domestic violence program, and that he was subject to a Protection From Abuse ("PFA") order from January 2019 until July 2019, because of domestic disputes with Mother. On January 23, 2020, the court adjudicated U.I. and Z.T. dependent and established their permanent placement goals as return to parent or guardian.

Beginning with the adjudication of E.I., Jr., and continuing with the adjudications of U.I. and Z.I., the juvenile court ordered Father to cooperate with service providers and complete certain objectives. Father's objectives included completing a domestic violence program, submitting to random drug screens, and completing drug and alcohol treatment, among others. Father failed to cooperate with the service providers, and the juvenile court found that he was in minimal compliance with the family service plan and had made minimal progress toward reunification.

On August 13, 2020, the court scheduled a hearing to consider whether to change the permanent placement goals for E.I., Jr., U.I., and Z.I. from return to parent or guardian to adoption. At the conclusion of the hearing, the court announced that it would change the [C]hildren's goals. It entered goal change orders on August 20, 2020….

*In the Interest of: Z.I.*, Nos. 964, 965 and 966 WDA 2020, unpublished memorandum at 1-3 (Pa. Super. filed March 12, 2021) (footnotes omitted).

As noted above, E.K.I., Jr.[3] was removed by Emergency Shelter Order and was determined to be dependent. In January of 2019, a PFA was issued due to domestic disputes. Father was drinking heavily and no supplies existed

---

[3] Older children were also removed from Mother's care at the same time.

in the home for the arrival of the twins. Following the birth of the twins, they were removed from Mother and Father's custody and were deemed dependent children. After subsequent permanency review hearings, both parents were found to be minimally compliant, making minimal progress toward alleviating the circumstances necessitating the original placements. At the time of the goal change hearings, the trial court found that Father had failed to maintain sobriety and was unsuccessfully discharged from drug and alcohol treatment. The parents continued to be involved in domestic disputes. Father also failed to maintain a stable residence, which resulted in his being homeless. Additionally, in connection with the goal change, the trial court found:

> 15. The findings of the Juvenile Court at the May 26, 2020 Permanency Review Hearing showed that Father had not met his burden. That [c]ourt found that there had been no compliance with the permanency plan in that [Father] had not had contact with the [C]hildren in over six months. Further, there had been no progress by him towards alleviating the circumstances which necessitated the original placement. The [c]ourt further found that aggravated circumstances existed as to [Father] … and he failed to maintain substantial and continued contact with the [C]hildren for a period of six months. The [c]ourt further found that [Father] was no longer a placement option for the [C]hildren.

Trial Court Final Decree, 8/27/2021, at 8 ¶15.

On October 1, 2020, CYS filed petitions to involuntarily terminate the parental rights of both Mother and Father to the three Children pursuant to 23 Pa.C.S. § 2511(a)(1), (2) and (5). In the context of the termination hearing, the court noted statements by a CYS caseworker that

> [Father] demonstrated that his [C]hildren were not his priority within a week prior to the goal change hearing. Within that one

week, the Agency received reports of [Father's] drinking, police reports of domestic disputes, and [Father] did not go to work all week…. No one disputes that [Mother] and [Father] love their [C]hildren. As observed through visitation with the [C]hildren, neither parent present[s] a nurturing bond to their [C]hildren. Though [E.K.I., Jr.] has a relationship with both [Mother] and [Father], he, as well as the twins, do not have that parent-child bond with either of them. [All three Children] have a genuine bond with their foster family, which demonstrates that they will be able to build a healthy bond with their adoptive family.

*Id.* at 10 ¶ 19. Another CYS social worker indicated that:

[Father] has not demonstrated stability in a lifestyle that would be conducive to reunification…. He is not forthcoming with information with his social worker and verbalizes his belief that appropriate boundaries are already in place. It is this social worker's opinion that [Father] would have to become more forthcoming with the information he provides during sessions. He would need to address any drug and alcohol issues and consistently maintain his mental health prior to the consideration of reunification.

*Id.* at 10 ¶ 20. The court also found that the termination of any bond between Father and the Children would not detrimentally affect them.

Therefore, based on the facts presented, the trial court concluded that CYS had met its burden of proof that Father's parental rights to the three Children should be terminated pursuant to 23 Pa.C.S. § 2511(a) (1), (2) and (b). Father then filed a timely appeal to this Court, raising the following issues:

1. Whether the trial court erred in concluding that the agency had met its burden of proof by clear and convincing evidence[?]

2. Whether the trial court erred and/or abused its discretion in making the determination to terminate the Father's rights to his children, Z.K.S.I., E.K.I., JR., and U.Z.M.I.[?]

Father's brief at 4.

We review an order terminating parental rights in accordance with the following standard:

> When reviewing an appeal from a decree terminating parental rights, we are limited to determining whether the decision of the trial court is supported by competent evidence. Absent an abuse of discretion, an error of law, or insufficient evidentiary support for the trial court's decision, the decree must stand. Where a trial court has granted a petition to involuntarily terminate parental rights, this Court must accord the hearing judge's decision the same deference that we would give to a jury verdict. We must employ a broad, comprehensive review of the record in order to determine whether the trial court's decision is supported by competent evidence.

*In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009) (quoting *In re S.H.*, 879 A.2d 802, 805 (Pa. Super. 2005)). Moreover, we have explained that:

> The standard of clear and convincing evidence is defined as testimony that is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue."

*Id.* (quoting *In re J.L.C. & J.R.C.*, 837 A.2d 1247, 1251 (Pa. Super. 2003)). The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004). If competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result. *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa. Super. 2003).

We are guided further by the following: Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *R.N.J.*, 985 A.2d at 276.

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

- 7 -

As noted above, the trial court terminated Father's parental rights pursuant to section 2511(a)(1), (2) and (b). We need only agree with the trial court as to any one subsection of section 2511(a), as well as section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Here, we analyze the court's decision to terminate under sections 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> ***
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> ***
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We first address whether the trial court abused its discretion by terminating Father's parental rights pursuant to section 2511(a)(2).

> In order to terminate parental rights pursuant to 23 Pa.C.S.[] § 2511(a)(2), the following three elements must be met: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied.

*In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa. Super. 2003) (citation omitted).  "The grounds for termination due to parental incapacity that cannot be remedied are not limited to affirmative misconduct.  To the contrary, those grounds may include acts of refusal as well as incapacity to perform parental duties."  *In re A.L.D.*, 797 A.2d 326, 337 (Pa. Super. 2002) (citations omitted).

Father's brief contains a discussion of the law referencing subsection 2511(a), however, he notes that although CYS had been involved with Mother since 2008, his involvement was only initiated at the time of E.K.I., Jr.'s removal in July of 2019.  He acknowledges his failures to meet some of CYS's requirements for reunification with the Children, but blames Mother for his troubles, identifying the PFA obtained by Mother and the criminal charges filed against him resulting in his incarceration from the fall of 2020 until February 2021 and from June of 2021 to August of 2021, as the reason.  Father also contends that Mother's extensive history with CYS impacted the perception of

his efforts. He also notes the impact of the COVID-19 pandemic and blames CYS for his lack of contact with the Children, resulting in a finding of aggravating circumstances, because CYS failed to return his phone calls and respond to his requests to see the Children.

Having reviewed the record, we conclude that it supports the findings of the trial court that Father has not provided the Children with the essential parental care, control and subsistence necessary for their mental and physical well-being, and that Father is unable or unwilling to remedy the causes of his parental incapacity, neglect or refusal. While the trial court noted Father's few positive accomplishments, it is clear that Father will not, or cannot, become a capable parent for the Children at any point in the foreseeable future. Thus, we conclude that CYS has carried its burden of proving the statutory grounds for termination under subsection 2511(a)(2). Therefore, Father is not entitled to relief.

Lastly, we recognize that Father has not provided any argument relating to subsection 2511(b). However, the trial court determined that the termination of Father's parental rights would not have a detrimental effect on the Children. Rather, Father's lack of visitation with E.K.I., Jr., undermined any bond that might have existed. Furthermore, the court found that a bond exists between the Children and their foster family. Therefore, the termination of Father's parental rights would not irreparably harm the Children. Accordingly, Father is not entitled to relief.

Decrees affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 4/27/2022